IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| CHRISTOPHER BAUGHCUM, JR., et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GENOLA JACKSON, et al., ) <br> ) <br> Defendants. ) <br> _____ ) | CIVIL ACTION NO. <br> 3:21-cv-00036-DHB-BKE |

**REPLY IN SUPPORT OF MOTION TO DISMISS
COMPLAINT OF DEFENDANT COL. CHRIS WRIGHT**

Defendant Col. Chris Wright, Commissioner of the Department of Public Safety (DPS), through counsel, submits this reply in support of his motion to dismiss Plaintiffs' complaint (Doc. 17) and in response to Plaintiffs' opposition thereto (Doc. 21). As shown below and in defendant's initial brief, the injury complained of in this suit—Plaintiffs' inability to obtain a weapons carry license due to their age—is not fairly traceable to the alleged actions of Commissioner Wright, and relief against him will not redress their injury. Plaintiffs accordingly lack standing to sue him.

**ARGUMENT AND CITATION TO AUTHORITY**

As the party claiming standing to sue Commissioner Wright, Plaintiffs have the burden of demonstrating that (1) they suffered an injury in fact (2) that is fairly traceable to the alleged unlawful conduct of Commissioner Wright and (3) is likely to be redressed by the requested relief. *See, e.g., Lujan v. Defs. of Wildlife*, 504 U.S.

1

555, 560-61 (1992). Plaintiffs do not dispute this. And, notably, Plaintiffs do not dispute that Commissioner Wright lacks any say in whether a weapons carry license is issued to an applicant. (Doc. 21 at 6). Indeed, they acknowledge, as they must, that "determining whether to issue a license is the responsibility of the Probate Judges" and that the Commissioner is charged only with "'furnish[ing] application forms and license forms' for individuals seeking weapons carry licenses." *Id.* (quoting O.C.G.A. § 16-11-129(a)(3)(B)(iii)). *See also id.* at 7 ("The Probate Judges are undeniably charged by statute with determining eligibility for a carry license.").

     Plaintiffs nonetheless contend, in conclusory fashion, that their inability to obtain a weapons carry license is fairly traceable to the Commissioner because the blank application forms provided to probate courts by DPS indicate that applicants under 21 should "attach proof of completed basic training or an honorable discharge." *See* Doc. 21 at 6; Doc. 20-8 at 2. Not so. At most, providing blank application forms to probate courts shows "some connection" between DPS and the enforcement of the challenged law. But Article III standing requires more than mere connection. *See Jacobson v. Fla. Sec'y*, 974 F.3d 1236, 1256 (11th Cir. 2020) (distinguishing the showing required to sue under *Ex parte Young*, where "a state official need only have 'some connection' with the enforcement of the challenged law," from the requirement for Article III standing). Rather, Plaintiffs must demonstrate traceability—i.e., a *causal connection* between their *injury* and the defendant's alleged conduct. *Id.* at 1225 ("To establish that their injury was traceable to the [defendant]'s conduct, the plaintiffs had to prove a 'causal

2

connection' between their injuries and the conduct they complained of.). Plaintiffs fail to do so.

That such a showing has not been make here is illustrated by the Eleventh Circuit's fairly recent ruling in *Jacobson v. Fla. Sec'y*, 974 F.3d 1236 (11th Cir. 2020). At issue in *Jacobson* was a Florida statute which required the candidate of the party that won the last gubernatorial election to appear first beneath each office listed on the ballot, with the candidate of the second-place party appearing second. *Id*. at 1242. The law tasked county Supervisors with placing candidates on the ballot in the correct order. *Id*. at 1244. The plaintiffs sued Florida's "chief election officer," the Secretary of State, challenging the constitutionality of the law and contending they were injured because Republicans, not Democrats, appeared first on the ballot in Florida's general elections. *Id*. at 1253. The district court held that the plaintiffs had standing to sue the Secretary, but the Eleventh Circuit reversed. Addressing the issue of traceability, the court observed that "[t]he problem for the [plaintiffs] is that Florida law tasks [county] Supervisors, independently of the Secretary, with printing the names of candidates on ballots in the order prescribed by the ballot statute." *Id*. And, the Court continued, "the [county] Supervisors are independent officials under Florida law who are not subject to the Secretary's control." *Id*. Under such circumstances, the plaintiffs could not, the court concluded, meet Article III's traceability requirement as to the Secretary.[1] *Id*.

---

[1] Notably, in *Jacobson*, the Secretary of State had a considerably larger role in the statutory scheme at issue than the Commissioner has here. The Secretary had authority to "prescribe rules and issue directives about ballot order" and "ballot

3

The same is true here. Georgia law tasks county probate judges, independently of DPS or its Commissioner, with determining whether to issue handgun licenses to applicants. *See* O.C.G.A. § 16-11-129(a)(1).[2] DPS is responsible only for providing blank license application forms to county probate courts free of charge. O.C.G.A. § 16-11-129(a)(3)(B)(iii). As in *Jacobson*, Plaintiffs point to nothing even suggesting, much less plausibly showing, that a judge's decision to grant or deny an application is dependent on the wording of those application forms. And, of course, county probate judges are not subject to the Commissioner's control.

In sum, Plaintiffs make no showing that the Commissioner or the blank forms DPS furnishes to probate courts play any role – directly or indirectly – in the determination by probate judges of whether to issue a weapons carry license. They have not, accordingly, established a sufficient causal connection between the

---

layout" which, as the Eleventh Circuit observed, "the [county] Supervisors might well be obliged to follow." *Id*. at 1256-57. Nonetheless, the court found this insufficient to "make[] the order in which candidates appear on the ballot traceable to her," noting that such circumstances "say[] nothing about whether she 'possess[es] authority to *enforce* the complained-of provision,' as the causation element of standing requires." *Id*. (emphasis in original).

[2] O.C.G.A. § 16-11-129(a)(1) requires probate judges to issue a license "on investigation of the applicant pursuant to subsections (b) and (d)." Subsection (b) includes the statute's age requirements. The statute clearly charges probate judges, not the Commissioner or anyone else, with determining whether a license should issue or if, instead, an applicant has failed to meet a qualification of the licensing statute, including the age provision. *See* O.C.G.A. § 16-11-129(d)(4) (providing that probate judges shall issue a license "unless facts establishing ineligibility have been reported or unless the judge determines such applicant has not met all the qualifications, is not of good moral character, or has failed to comply with any of the requirements contained in this Code section.").

Commissioner's conduct and the injury complained of. "Because the [Commissioner] didn't do (or fail to do) anything that contributed to [their] harm," Plaintiffs "cannot meet Article III's traceability requirement." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc).

Perhaps recognizing that their injury arises not from the wording of license application forms but from "the independent action" of probate court judges, *see Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976), Plaintiffs re-characterize their injury to include not only an inability to obtain a license, but an inability "even to apply for one." *See* Doc. 21 at 6. They contend, in particular, that "individuals under twenty-one simply cannot fully complete and submit the form if they have not served in the military" and attribute this inability to the form's wording. *Id.* The problem for Plaintiffs is that nowhere in their complaint do they allege that they "cannot complete" or "cannot submit" a license application, much less that they were injured in such a manner. *See generally*, Doc. 1. Those allegations appear for the first time in Plaintiffs' brief. And, of course, Plaintiffs *are* free to fill out and submit a license application to the probate court without proof of military service attached. Plaintiffs point to nothing in the law which precludes them from doing so.[3] It is true that, upon investigation by a probate judge, the license application is likely to be denied for failure to meet the age requirements of

---

[3] *See* O.C.G.A. § 16-11-129(a)(3)(A) (providing only that "[a]pplicants shall submit the application for a weapons carry license or renewal license to the judge of the probate court on forms prescribed and furnished free of charge to persons wishing to apply for the license or renewal license.").

O.C.G.A. § 16-11-129(b). But it is this anticipated denial, not some purported inability to fill out or submit an application for consideration, which constitutes Plaintiffs' injury. Indeed, that is the *only* injury described in the complaint.[4] And, as shown, that injury is not fairly traceable to Commissioner Wright. Plaintiffs' attempt, through allegations in their brief, to amend their complaint to include new and different injury allegations and thereby manufacture standing against the Commissioner should be rejected. *See, e.g., Marchelletta v. Bergstrom*, 2016 U.S. Dist. LEXIS 195144, at *45 (N.D. Ga. Feb. 25, 2016) ("Plaintiff may not amend his complaint by raising arguments or allegations for the first time in his response brief."); *see also Hughes v. UPS*, 639 Fed. Appx. 99, 104 (3d Cir. 2016) (it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

Finally, Plaintiffs make what appears to be an argument that their injury is likely to be redressed by the entry of relief against defendant Wright. They contend, in particular, that should they prevail on their Second Amendment claim, "the form will need to be updated, and Commissioner Wright is the official responsible for its contents." (Doc. 21 at 2). But for the same reason Plaintiffs' injury is not fairly traceable to the Commissioner, an order directing him to "update" blank application

---

[4] *See* Doc. 1, ¶¶ 47, 49, 51 (complaining that Plaintiff Baughcum is "preclude[ed] … from *obtaining* a weapons license" and is thus prohibited "from carrying a loaded handgun in public," and averring that he "desires to *obtain* a weapons carry license") (emphasis added); ¶¶ 62, 64, 66 (making identical allegations regarding Plaintiff Meyers); ¶¶ 77, 79, 81 (making identical allegations regarding Plaintiff Long).

forms (presumably to omit language about attaching proof of military training) is not likely to redress their injury. *See Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 148 F.3d 1231, 1253 (11th Cir. 1998) (redressability requires showing that it is "likely, as opposed to merely speculative," that the plaintiffs' injuries would be redressed by a favorable decision against the defendant). As shown, county probate judges determine the eligibility of applicants for a weapons carry license, and nothing in the statute ties that determination to the wording of application forms provided by DPS. Nor are there any allegations even suggesting that county probate judges are likely to ignore the law and issue licenses to those under 21 based solely on a revised application form. *Cf. Jacobson*, 974 F.3d at 1255 (finding the redressability requirement of standing was not met because the plaintiffs did not show that declaratory relief against the Secretary would "significantly increase the likelihood" that county supervisors would ignore state law regarding how names should appear on ballots and arrange them in the manner sought by the plaintiffs).

There is, in short, nothing to suggest that relief directing the Commissioner to change the wording of application forms would result in county probate judges issuing licenses to Plaintiffs or to any individuals who do not meet the statutory age requirements. Relief against the Commissioner would not redress the injury alleged. The redressability requirement of Article III standing, like the traceability requirement, is not met here.

## CONCLUSION

For the reasons shown herein and in his opening brief, Commissioner Wright respectfully requests that his motion be granted and that this action against him be dismissed.

Respectfully submitted,

**GEORGIA DEPARTMENT OF LAW**

CHRISTOPHER M. CARR        112505
Attorney General

BETH BURTON                        027500
Deputy Attorney General

TINA M. PIPER                         142469
Senior Assistant Attorney General

/s/*Deborah Nolan Gore*
DEBORAH NOLAN GORE       437340
Assistant Attorney General

*Counsel for defendant Col. Chris Wright*

Please serve:
Deborah Nolan Gore
40 Capitol Square, S.W
Atlanta, GA  30334-1300
Telephone: (404) 458-3289
dgore@law.ga.gov

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT OF DEFENDANT COL. CHRIS WRIGHT** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record in this case.

This 31st day of August, 2021.

                                          */s/ Deborah Nolan Gore*
                                          DEBORAH NOLAN GORE

Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, GA  30334-1300
Telephone: (404) 458-3289
dgore@law.ga.gov