IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| CHRISTOPHER BAUGHCUM, JR., et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) CIVIL ACTION NO. ) 3:21-cv-00036-DHB-BKE |
| GENOLA JACKSON, et al., | ) ) ) |
| Defendants. | ) |

### RESPONSE OF DEFENDANT COL. CHRIS WRIGHT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARAY JUDGMENT

Defendant Col. Chris Wright, Commissioner of the Department of Public Safety, files this response in opposition to Plaintiffs' Motion for Summary Judgment (Doc. 20) and asks the Court to deny Plaintiffs' motion.

### INTRODUCTION

Georgia law permits individuals 18 years of age and older to own and possess handguns and to carry a loaded handgun on their property or inside their home, motor vehicle, or place of business, or while hunting, fishing, or sport shooting. A license is generally required, however, to carry a loaded handgun in public, and the minimum age to obtain such a license is 21 for individuals who have not received basic training in the armed services. *See generally* O.C.G.A. §§ 16-11-126, 16-11-129. Plaintiffs—a gun rights organization and three individuals under the age of 21 who wish to carry loaded handguns in public—filed suit challenging this restriction. Their complaint, brought under 42 U.S.C. § 1983, asserts two Second Amendment claims. The first alleges that Georgia's minimum age requirement for obtaining a weapons carry license

1

is unconstitutional on its face. The second alleges that the age restriction is unconstitutional as applied to women. Plaintiffs seek declaratory relief regarding the constitutionality of the challenged restriction, an injunction barring enforcement of the corresponding statutory provisions, and nominal damages, attorney's fees, and costs. They now move for summary judgment.

      Plaintiff's motion should be denied. First, the undisputed facts show that Plaintiffs' inability to obtain a weapons carry license is neither fairly traceable to any actions taken by Commissioner Wright nor likely to be redressed by the entry of relief against him. Plaintiffs thus lack standing to pursue their claims. Second, Commissioner Wright in his individual capacity is entitled to qualified from Plaintiffs' claims for money damages, and any such claims against him in his official capacity are barred by the Eleventh Amendment and the text of 42 U.S.C. § 1983. Finally, the challenged restriction is consistent with the Second Amendment, as multiple courts have held. Accordingly, even if Plaintiffs had standing to sue Commissioner Wright, they are not entitled to judgment as a matter of law on their Second Amendment claims.

## FACTS RELEVANT TO PLAINTIFFS' MOTION[1]

### A. Georgia's Statutory Scheme

Under Georgia law, a Georgia weapons carry license is generally required to carry a loaded handgun in public.[2] *See* O.C.G.A. §§ 16-11-126, 16-11-129. The regulatory framework governing this requirement is outlined in O.C.G.A. §§ 16-11-126 and 16-11-129. *Id.* Section 16-11-126 begins by setting forth numerous circumstances in which a loaded handgun may be carried *without* a license. *See* O.C.G.A. § 16-11-126(a)–(f). A license is not required, for instance, to carry a loaded handgun on one's property, or inside one's "home, motor vehicle, or place of business." O.C.G.A. § 16-11-126(a). Nor is a license required for a person with a valid hunting or fishing license to carry a loaded handgun while hunting, fishing, or engaged in sport shooting. *Id.* at § 16-11-126(f)(1). Most individuals wishing to carry a loaded handgun beyond the exceptions listed in O.C.G.A. § 16-11-126(a)–(f) must, however, obtain a weapons carry license. *See* O.C.G.A. § 16-11-126(h)(1). The failure to do so constitutes the offense of carrying a weapon without a license, and a first offense is punishable as a misdemeanor. *See* O.C.G.A. § 16-11-126(h)(2). The defense of self or others is, however, an absolute defense to the licensing requirement. *See* O.C.G.A. § 16-11-138.

---

[1] Defendants do not necessarily concede that all of these facts herein accurately describe what occurred, but they submit that these are the operative facts for purposes of summary judgment. "[T]he 'facts,' as accepted for purposes of summary judgment, may not be the actual facts of the case …." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

[2] Loaded long guns may be carried in public without a license if carried in an open and fully exposed manner. *See* O.C.G.A. § 16-11-126(b).

3

Section 16-11-129 governs the application, issuance, and renewal process for weapons carry licenses. Individuals seeking to obtain a license must submit a license application to a judge of the probate court who, upon investigation of the applicant's eligibility, determines whether to issue a weapons carry license to the applicant. O.C.G.A. § 16-11-129(a)(1). Georgia is a "shall issue" state, and the law thus requires probate judges to issue a license to all eligible individuals. *Id.* Subsection (b)(2) of the statute sets forth the circumstances in which an individual is ineligible to receive a license. Of relevance here, it provides that "[n]o weapons carry license shall be issued to … [a]ny person younger than 21 years of age…." *See* O.C.G.A. § 16-11-129(b)(2)(A). An exception to this age requirement exists for those who have completed basic training in the armed forces of the United States and are actively serving or have been honorably discharged. *Id.* Such individuals may, if otherwise qualified, obtain a weapons carry license if at least 18 years of age. *Id.* In the event that an individual's application is denied by the probate judge, the applicant may request a hearing before such judge regarding his or her fitness to be issued a license or bring an action in mandamus. *See* O.C.G.A. § 16-11-129(b.1), (j).

### B. Defendant Commissioner Chris Wright

Defendant Chris Wright is the Commissioner of the Georgia Department of Public Safety (DPS). (Declaration of Col. Chris Wright, Exh. A, at ¶ 2). DPS's role in the statutory scheme described above is limited to furnishing blank license application forms to probate court judges at no cost. *See* O.C.G.A. § 16-11-129(a)(3)(B)(iii). The blank forms contain a space for applicants to enter their date of birth and the language "Age if < 21:____ + attach proof of completed basic training or honorable

discharge." (Doc. 20-8 at 2). Neither DPS nor its Commissioner have any other involvement in the application process, and they play no role in the issuance (or denial) of licenses. (Wright Dec., ¶ 3). They do not receive or review completed applications; they do not investigate whether an applicant meets the eligibility requirements set forth in O.C.G.A. § 16-11-129; they do not determine which applicants meet Georgia's licensing requirements; and they neither issue nor deny licenses to any applicant. (*Id.*, ¶ 4). Likewise, DPS and Commissioner Wright have no role in the statutory processes for challenging the denial of a license. (*Id.*). They supply blank application forms to probate courts. That is all.

## C. Plaintiffs

Plaintiffs Christopher Baughcum Jr., Zane Meyers, and Sophie Long are Georgia residents and gun owners between the ages of 18 and 20 years old. (Doc. 1, ¶¶ ¶¶ 18-20, 41-42, 56-57, 71-72). They express a desire to obtain a weapons carry license but complain they cannot, because they are under 21 and not current or former members of the military. (*Id.*). All three aver that, but for this age requirement, they would be eligible to receive a license. (*Id.*, ¶¶ 41, 56, 71). Plaintiff Firearms Policy Coalition, Inc. (FPC) purports to have numerous members, including the individual plaintiffs, who are between the ages of 18 and 20, reside in Georgia, and have been similarly adversely affected by the enforcement of Georgia's licensing requirement. (*Id.*, ¶ 21).

## ARGUMENT AND CITATION OF AUTHORITY

### A. Plaintiffs lack standing to sue Commissioner Wright.

Standing is a jurisdictional issue, and the party invoking federal jurisdiction bears the burden of establishing standing. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To do so, a plaintiff must demonstrate that he or she: (1) suffered or is likely to suffer an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable decision. *See, e.g., Friends of the Earth v. Laidlaw Environmental Servs.*, 528 U.S. 167, 180-82 (2000). The plaintiff has the burden of establishing all three elements and, at the summary judgment stage, "cannot rely on allegations alone but must set forth evidence demonstrating [his or her] standing." *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019). A plaintiff who moves for summary judgment bears the burden of demonstrating that there exists no genuine issue of material fact as to *each element* of standing. *See, e.g., Dept. of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 329 (1999) ("To prevail on a Federal Rule of Civil Procedure 56 motion for summary judgment . . . a plaintiff must establish that there exists no genuine issue of material fact as to justiciability."). Thus, even if a movant can demonstrate some injury in fact, he or she must still show, through evidence, that the alleged injury is "'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party," and that it is redressable by relief against the defendant. *See, e.g., Jacobson v. Fla. Sec'y*, 957 F.3d 1193, 1207 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560). Plaintiff fails to demonstrate either.

Regarding traceability, the injury claimed is the inability of Plaintiffs to obtain a weapons carry license due to their age. Thus, for Plaintiffs to have standing to sue Commissioner Wright, this inability must be "fairly . . . traceable" to his conduct "as opposed to the action of . . . a third party." *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1296 (11th Cir. 2019) (*en banc*). It is not. As Plaintiffs acknowledge, and as the undisputed evidence makes clear, the only role DPS has with respect to the challenged provisions is providing blank license application forms to probate courts. *See* O.C.G.A § 16-11-129(a)(3)(b)(iii). The law does not task DPS or its Commissioner with reviewing completed applications, determining which applicants meet Georgia's licensing requirements and which do not, or issuing or not issuing licenses to any applicant, and neither play any role in the same. *See generally,* O.C.G.A. § 16-11-129; Exh. A, Wright Dec., ¶¶ 2-4. That responsibility falls solely to county probate judges. O.C.G.A. § 16-11-129(a)(1). It is they who determine, "on investigation of the applicant pursuant to subsections (b) and (d)" of O.C.G.A. § 16-11-129, whether a license shall issue, and it is they who issue (or deny) licenses. *Id.*

Plaintiffs point out that the license application forms contain a space for applicants to enter their date of birth the language "Age if < 21:____ + attach proof of completed basic training or honorable discharge." (Doc. 20-2 at 6; Doc. 20-8 at 2). Indeed, that is the *only* fact to which Plaintiffs point in an effort to establish the required traceability. But such language alone, in the absence of any evidence of a causal connection between it and the licensing decisions of probate judges, does not establish traceability. To the contrary, there is no evidence that, if DPS provided blank application forms that do not contain such language, or contained different language,

7

probate judges reviewing completed applications would ignore their statutory duty to enforce the age requirement set forth in O.C.G.A. § 16-11-129(b). The language on the forms is simply not the reason Plaintiffs are unable to obtain a license. Nor could it be. Under the Georgia Constitution, the General Assembly has express authority to "prescribe the manner in which arms may be borne." Ga. Const. Art. I, Section I, Para. VIII. As discussed, the General Assembly established a framework which tasks the probate courts, not DPS or its Commissioner, with investigating license applications and issuing licenses as set forth in O.C.G.A. § 16-11-129. The language of the application does not and cannot control who obtains a weapons carry license.

At most, providing blank application forms to probate courts shows "some connection" between DPS and the enforcement of the challenged law. But Article III standing requires more than mere connection. *See Jacobson v. Fla. Sec'y*, 974 F.3d 1236, 1256 (11th Cir. 2020) (distinguishing the showing required to sue under *Ex parte Young*, where "a state official need only have 'some connection' with the enforcement of the challenged law," from the requirement for Article III standing). It requires traceability—i.e., a *causal connection* between the plaintiff's *injury* and the defendant's alleged conduct. *Id.* at 1225 ("To establish that their injury was traceable to the [defendant]'s conduct, the plaintiffs had to prove a 'causal connection' between their injuries and the conduct they complained of."). That such a showing has not been made here is illustrated by the Eleventh Circuit's fairly recent ruling in *Jacobson v. Fla. Sec'y*, 974 F.3d 1236.

At issue in *Jacobson* was a Florida statute which required the candidate of the party that won the last gubernatorial election to appear first beneath each office listed

on the ballot, with the candidate of the second-place party appearing second. *Id.* at 1242. The law tasked county Supervisors with placing candidates on the ballot in the correct order. *Id.* at 1244. The plaintiffs sued Florida's "chief election officer," the Secretary of State, challenging the constitutionality of the law and contending they were injured because Republicans, not Democrats, appeared first on the ballot in Florida's general elections. *Id.* at 1253. The district court held that the plaintiffs had standing to sue the Secretary, but the Eleventh Circuit reversed. Addressing the issue of traceability, the court observed that "[t]he problem for the [plaintiffs] is that Florida law tasks [county] Supervisors, independently of the Secretary, with printing the names of candidates on ballots in the order prescribed by the ballot statute." *Id.* And, the Court continued, "the [county] Supervisors are independent officials under Florida law who are not subject to the Secretary's control." *Id.* Under such circumstances, the plaintiffs could not, the court concluded, meet Article III's traceability requirement as to the Secretary.[3] *Id.*

The same is true here. Georgia law tasks county probate judges, not DPS or its Commissioner, with determining whether to issue or deny handgun licenses to applicants. *See* O.C.G.A. § 16-11-129(a)-(d)(1). DPS is responsible only for providing

---

[3] Notably, in *Jacobson*, the Secretary of State had a considerably larger role in the statutory scheme at issue than the Commissioner has here. The Secretary had authority to "prescribe rules and issue directives about ballot order" and "ballot layout" which, as the Eleventh Circuit observed, "the [county] Supervisors might well be obliged to follow." *Id.* at 1256-57. Nonetheless, the court found this insufficient to "make[] the order in which candidates appear on the ballot traceable to her," noting that such circumstances "say[] nothing about whether she 'possess[es] authority to *enforce* the complained-of provision,' as the causation element of standing requires." *Id.* (emphasis in original).

9

blank license application forms to county probate courts free of charge and, as in *Jacobson*, Plaintiffs point to no law or evidence even suggesting, much less showing, that a judge's decision to grant or deny an application is dependent on the wording of those forms. Nor are county probate judges subject to the Commissioner's control. Rather, probate judges are bound by the statutory language: they "shall issue" licenses to eligible applicants and shall deny licenses to ineligible applicants. § 16-11-129(a)(1). Plaintiffs' injury is, in short, "the result of the independent action of some third party." *Jacobson*, 957 F.3d at 29. It is not fairly traceable to Commissioner Wright.

Plaintiffs also fail to meet their burden on redressability. Plaintiffs make what appears to be an argument that their injury is likely to be redressed by the entry of relief against Commissioner Wright by contending that, should they prevail on their claims, "the [application] form will need to be updated, and Commissioner Wright is the official responsible for its contents." (Doc. 20-2 at 2). But for the same reason Plaintiffs' injury is not fairly traceable to the Commissioner, an order directing him to "update" blank application forms (presumably to omit language about attaching proof of military training) will not redress their injury. *See Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 148 F.3d 1231, 1253 (11th Cir. 1998) (redressability requires showing that it is "likely, as opposed to merely speculative," that the plaintiffs' injuries would be redressed by a favorable decision against the defendant). As shown, nothing in the statute permits county probate judges to grant or deny licenses based on the wording of the blank application forms provided by DPS, and there is no evidence in the record even suggesting that county probate judges are likely to ignore the law and issue licenses to those under 21 based solely on a revised application form. *Cf.*

*Jacobson*, 974 F.3d at 1255 (finding the redressability requirement of standing was not met because the plaintiffs did not show that declaratory relief against the Secretary would "significantly increase the likelihood" that county supervisors would ignore state law regarding how names should appear on ballots and arrange them in the manner sought by the plaintiffs). The probate judges' statutory duties, not the wording of the application form, is what caused plaintiffs' injuries. Relief against the Commissioner would not change those duties, and so it cannot redress the Plaintiffs' alleged injury.

Plaintiffs do not and cannot show that Article III's traceability and redressability requirements are met with respect to their claims against Commissioner Wright. The Court thus lacks jurisdiction over the claims. The claims should be dismissed, and Plaintiffs' request for summary judgment should be denied.

### B. Commissioner Wright is entitled to qualified immunity from Plaintiffs' claims for damages.

Even if Plaintiffs could demonstrate standing, Commissioner Wright is entitled to qualified immunity from Plaintiffs' claims for damages. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). The test for qualified immunity is two-pronged: (1) was the government official acting within the scope of his discretionary authority; and (2) did the official's conduct violate "clearly established law." *Maggio v. Sipple*, 211 F. 3d 1346, 1350 (11th Cir. 2000). As far as the first prong, the question is whether the

11

official was performing a legitimate job-related function through means that were within his power to utilize. *See, e.g., Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F. 3d 1188, 1194 (11th Cir. 2002). To carry that burden, the plaintiff must show that the constitutional right asserted was clearly established at the time the alleged violation occurred such that the defendant had "fair and clear warning" that his conduct was unconstitutional. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 739, 746 (2002). Liability only attaches if the official's act is "so obviously wrong, in light of pre-existing law, that only a plainly incompetent [official] or one who was knowingly violating the law would have done such a thing." *See Row v. Ft. Lauderdale*, 279 F.3d 1271, 1280 (11th Cir. 2002).

    Here, there is no dispute that, at all times relevant, Commissioner Wright was acting within the scope of his discretionary authority and pursuant to Georgia law. The burden is on Plaintiffs to show that qualified immunity is not appropriate. They cannot make this showing, because they can point to no law from the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court that could have placed Commissioner Wright on notice that the age-based licensing restriction at issue amounts to a violation of Plaintiffs' constitutional rights. Accordingly, he is entitled to qualified immunity, and Plaintiffs are not entitled to judgment as a matter of law on their claims for damages against him.

## C. Any official-capacity claims for money damages against Commissioner Wright are barred.

To the extent Plaintiffs seek monetary damages from Commissioner Wright in his official capacity, their claims are barred for two independent reasons. First, the Eleventh Amendment bars suit against a state or one of its agencies, departments or officials, absent a state waiver or a valid congressional override, when the state is the real party in interest or when any monetary recovery would be paid from state funds. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-102 (1984).[4] "The general test for determining whether the state is the real party in interest, even though it is not a named defendant, is whether the relief sought against the nominal defendant would in fact operate against the state. . ." *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1577 (11th Cir. 1994) (citation omitted). Here, because any monetary relief that the complaint seeks from Commissioner Wright as a state officer in his official capacity would operate against the state, any official-capacity claims for damages are barred by the Eleventh Amendment. *See Zatler v. Wainwright*, 802 F.2d 397, 399-400 (11th Cir. 1986).[5]

---

[4] There is no state waiver or congressional override in the context of claims under 42 U.S.C. § 1983. The State of Georgia has not consented to being sued under § 1983 but instead has preserved its sovereign immunity in the state constitution. *See* Ga. Const. Art. 1, Sec. II, Par. IX(f) ("No waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution."). And the Supreme Court has held that § 1983 does not override the protections of the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979).

[5] While an exception to Eleventh Amendment immunity exists under *Ex parte Young*, 209 U.S. 123, 158-59 (1908), it is limited to suits against state officers for prospective injunctive relief. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24 (1997). Here, Plaintiffs seek nominal damages in addition to prospective injunctive relief.

Second, Commissioner Wright in his official capacity is not a "person" subject to suit under § 1983. Section 1983 provides a cause of action for violations of federal constitutional or statutory rights by any "person" acting under color of state law. 42 U.S.C. § 1983. The Supreme Court has ruled that the term "person" in this context is to be given its ordinary meaning, and that "a State is not a 'person' within the meaning of § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989). And the Court has explained that the term "state" includes individual state officers who are sued in their official capacity. *See id.* at 70-71. To the extent Plaintiffs assert their § 1983 claims for money damages against Commissioner Wright in his official capacity, the claims are not cognizable and Plaintiffs are not entitled to judgment as a matter of law on such claims.

### D. The challenged age restrictions in O.C.G.A. §§ 16-11-126 and 16-11-129 do not violate the Second Amendment.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment "conferred an individual right to keep and bear arms," the "central component" of which is a right to self-defense. 554 U.S. 570, 595, 599 (2008). Subsequently, in *McDonald v. City of Chicago*, the Supreme Court held that "the right to keep and bear arms [is] among those fundamental rights necessary to our system of ordered liberty" and is applicable to the states through the Fourteenth Amendment. 561 U.S. 742, 750 (2010). *Heller* made clear, however, that the right secured by the Second Amendment is not without limitation and that its

holding should not "be taken to cast doubt on longstanding prohibitions" on the possession of firearms by certain categories of people, the carrying of firearms in sensitive places, or other "presumptively lawful regulatory measures." *Heller* at 626-627 and n. 26.

The Supreme Court has not "definitely resolved the standard for evaluating Second Amendment claims." *Silvester v. Becerra*, 138 S. Ct. 945, 947–48 (2018) (Thomas, J., dissenting from denial of certiorari). A number of jurists read *Heller* and *McDonald* as holding that the only applicable analysis under the Second Amendment involves a determination—based on text, history and tradition—of whether the restricted activity is covered by the Second Amendment and that a means-ends scrutiny is never appropriate. *See, e.g., Rogers v. Grewal*, 140 S. Ct. 1865, 1866 (2020) (Thomas, J., dissenting) ("Consistent with [the Supreme Court's] guidance, many jurists have concluded that text, history, and tradition are dispositive in determining whether a challenged law violates the right to keep and bear arms."); *Heller v. District of Columbia*, 670 F.3d 1244, 1271 (D.C. Cir. 2011) (*Heller II*) (Kavanaugh, J., dissenting). Some circuits have adopted a tiers-of-scrutiny inquiry for Second Amendment claims. *See NRA v. BATFE*, 700 F.3d 185, 194 (5th Cir. 2012). The Eleventh Circuit has suggested a tiers-of-scrutiny analysis is "appropriate," but has never applied means-end scrutiny. *See GeorgiaCarry.Org Ind. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012).

Whatever the proper standard, the restrictions in § 16-11-126 and § 16-11-129 are constitutional.[6] Although the Eleventh Circuit has not addressed the constitutionality of restrictions on the use of firearms by those under 21, a number of other courts have upheld similar statutes post-*Heller*. In *BATFE*, 700 F.3d 185, the Fifth Circuit rejected a Second Amendment challenge to the federal prohibition on the purchase of handguns by individuals under 21 from federal firearms licensees, 18 U.S.C. § 922(b)(1). After engaging in a lengthy analysis of founding-era attitudes along with nineteenth century legislation, case law, and legal commentary, the court concluded that the age-based restriction was "consistent with a longstanding, historical tradition." *Id.* at 203. A year later, the same court upheld Texas statutes which collectively prohibited persons under 21 from receiving a license to carry handguns in public, openly or concealed. *See NRA of Am., Inc. v. McCraw*, 719 F.3d 338 (5th Cir. 2013). And, recently, a district court in the Eleventh Circuit reached a similar conclusion. *See NRA v. Swearingen*, 2021 U.S. Dist. LEXIS 117837 (N.D. Fla. June 24, 2021) (observing that restrictions on the sale of firearms to, and use of firearms by, those under 21 are longstanding and do not conflict with any founding-era understanding of the guarantees of the Second Amendment).[7] Although a recent

---

[6] The complaint in this case names a state officer in his official capacity and, thus, Fed. R. Civ. P. 5.1 does not apply. *See id.* at (a)(1)(B). The Attorney General has received notice of the challenge.

[7] *See also Mitchell v. Atkins*, 483 F. Supp. 3d 985, 993 (W.D. Wash. 2020) (observing that "at common law and at the time of the adoption of the Constitution, the age of majority was 21 years" and that by the early 1900's, "over half the states then in the union had set 21 as the minimum age for purchase or use of a particular firearm," and holding that a prohibition on selling semiautomatic rifles to 18-to-20-year-olds "comports with . . . longstanding laws"); *Jones v. Becerra*, 498 F. Supp. 3d 1317, 1325-1327 (S.D. Cal. 2020) (finding plaintiffs unlikely to succeed on the merits of a Second

16

Fourth Circuit panel reached a contrary conclusion, that opinion has been vacated and is no longer precedential. *See Hirschfeld*, 5 F.4th 407, *vacated as moot*, No. 19-2250, 2021 WL 4301564 (4th Cir. Sept. 22, 2021). If this Court reaches the merits, it should follow these courts and uphold the challenged statutes.

## CONCLUSION

For the foregoing reasons, Commissioner Chris Wright respectfully requests that the Court deny Plaintiffs' motion for summary judgment.

Respectfully submitted,

**GEORGIA DEPARTMENT OF LAW**

CHRISTOPHER M. CARR        112505
Attorney General

BETH BURTON        027500
Deputy Attorney General

TINA M. PIPER        142469
Senior Assistant Attorney General

/s/*Deborah Nolan Gore*
DEBORAH NOLAN GORE        437340
Assistant Attorney General

*Counsel for defendant Col. Chris Wright*

Please serve:
Deborah Nolan Gore
40 Capitol Square, S.W
Atlanta, GA  30334-1300
Telephone: (404) 458-3289
dgore@law.ga.gov

---

Amendment challenge to state law restrictions on the possession and use of firearms by 18-to-20-year-olds, because such age-based restrictions were longstanding and did not burden the Second Amendment).

17


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **RESPONSE OF DEFENDANT COL. CHRIS WRIGHT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record in this case.

This 28th day of September, 2021.

                                */s/ Deborah Nolan Gore*
                                DEBORAH NOLAN GORE

Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, GA 30334-1300
Telephone: (404) 458-3289
dgore@law.ga.gov